## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Candace Gulsvig, Mel Gulsvig, John Schmoll, Individually and On Behalf of all Others Similarly Situated

               Plaintiffs

      v.

Mikki Jo Peterick, in her individual capacity as an employee of Mille Lacs County; Mille Lacs County; John and Jane Does (1 – 120) acting in their individual capacity as supervisors in Mille Lacs County; Michael Campion, in his individual capacity as Commissioner of the Minnesota Department of Public Safety; Mona Dohman, in her individual capacity as Commissioner of the Minnesota Department of Public Safety, John and Jane DOE Employees of the Minnesota Department of Public Safety in their individual capacities as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety,

               Defendants.

Case No. _____

**COMPLAINT
(CLASS ACTION)**

**JURY TRIAL DEMANDED**

---

## <u>COMPLAINT</u>

Plaintiffs, individually and on behalf of all other similarly situated, for their Class Action Complaint ("Complaint") against the above-named defendants hereby state and allege as follows:

## INTRODUCTION

1.      Congress enacted the Driver's Privacy Protection Act ("DPPA") in 1994 to prevent impermissible access, use and disclosure of individuals' drivers' license information.  While it recognized that the information contained in drivers' licenses was a valid tool for law enforcement, it restricted that use to only permissible purposes under the statute.

2.      Mille Lacs County employed Mikki Jo Peterick ("Peterick") in the Mille Lacs County Family Services as an investigator for Mille Lacs County Family Services. As part of her duties, Mille Lacs County authorized Peterick to have access to the Minnesota Department of Public Safety's Driver Vehicle Services database ("DVS database") that contained the private drivers' license information of every Minnesota driver.  According to Mille Lacs County, over an almost four year period Peterick illegally accessed the information of over 370 individuals without a permissible work-related reason.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), and the DPPA 18 U.S.C. § 2721 et seq.  The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4.      Plaintiff Candice Gulsvig is, and was at all times material, a resident of the State of Minnesota and a citizen of the United States.

5.      Plaintiff Mel Gulsvig is, and was at all times material, a resident of the State of Minnesota and a citizen of the United States.

6.      Plaintiff John Schmoll is, and was at all times material, a resident of the State of Minnesota and a citizen of the United States.

7.      Defendant Mikki Jo Peterick ("Peterick") is, and was at times material, a resident of the State of Minnesota, a citizen of the United States, and an employee of Mille Lacs County.

8.      Defendant Mille Lacs County ("County") is a county in Minnesota, which can be sued under Minn. Stat. § 466.01, *et seq.*

9.      Defendant John and Jane Doe (1 – 120) ("Supervisor Defendants"), upon information and belief, were, at all times material, residents of the State of Minnesota and citizens of the United States, duly appointed and acting in their individual capacities of the employees and supervisors in Mille Lacs County.

10.      Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Campion was during part of the relevant time period duly appointed and acting as the Commissioner of the Minnesota Department of Public Safety, and is being sued in his individual capacity.

11.     Defendant Ramona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Dohman is, and was during part of the relevant time period, duly appointed and as the Commissioner of the Minnesota Department of Public Safety, and is being sued in her individual capacity.  Plaintiffs seek prospective relief to bring the actions and procedures of Commissioner Dohman in line with the policy of the State of Minnesota, which is to follow the mandates of the DPPA and to enforce it.

12.     Defendants Campion, and Dohman shall hereinafter be referred to as the "Commissioner Defendants" or "Defendant Commissioners."

13.     John and Jane Doe employees of the Minnesota Department of Public Safety, upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety, and each is being sued in his or her individual capacities.

14.     Plaintiffs refer to John and Jane Doe officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the Department of Vehicle Services' database as "Department of Public Safety Does" or "DPS Does."

4

## COMMON FACTUAL ALLEGATIONS

15.     This case involves the invasion of privacy and illegal searches of Plaintiffs and Class Members by a Mille Lacs County employee, Mikki Jo Peterick, who viewed the private driver's license information of more than three hundred and seventy individuals (370), without any legitimate business reason to do so.

16.     Peterick was employed by Mille Lacs County Family Services.

17.     Milles Lacs County authorized Peterick to use the DVS database.

18.     The Driver and Vehicle Services Division of the Minnesota of Public Safety ("DPS") maintains motor vehicle records on each of the named Plaintiffs and the Class.

19.     The motor vehicle records contain "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including the names, date of birth, driver's license number, address, driver's license photo, weight, height, and eye color of Plaintiffs' and the Class, and perhaps including their medical and disability information.

20.     The Plaintiffs and the Class Members all provided the Private Data to DPS, including their addresses, color photographs, dates of birth, weights, heights, and eye colors for the purposes of acquiring and utilizing a Minnesota State driver's license.

21.     The Private Data is protected from access, use, and disclosure by 18 U.S.C. § 2721 *et seq.*, the Drivers Privacy Protection Act.

22.     On information and belief, from January 2, 2009 to November 10, 2012, Peterick engaged in the unauthorized acquisition of private data of approximately 379 individuals.

23.     At no time did any of the Plaintiffs and Class Members provide their express consent for Peterick, the County, Supervisor Defendants, or Commissioner Defendants to obtain, disclose or use their Private Data for any non-authorized purpose.

24.     Upon information and belief, Peterick is no longer employed by Mille Lacs County.

25.     On or about March 1, 2012, as a result of Peterick's conduct, the County sent out approximately 379 data-breach letters informing the subject of Peterick's "unauthorized access of…private information by an employee of Mille Lacs County Community & Veterans Services."  (Sample Letter attached as Exhibit A).

26.     On information and belief, most of the 379 individuals who had their private information accessed, had it done so for purposes not permitted under the DPPA.

27.     The letters sent on or about March 1, 2012, admitted that the accesses were "unauthorized."

28.     Upon information and belief, Peterick knew that her accesses of Private Data was unauthorized.

29.     Upon information and belief, the County knew of Peterick's actions.

30.     Upon information and belief, the County knew that Peterick's actions were pervasive and widespread.

31.     Peterick's conduct in obtaining, disclosing, or using the private data for purposes not permitted under the DPPA was in willful and reckless disregard of federal law.

32.     Each unauthorized access of Plaintiffs' and Class Members' private information, made while acting under color of state law, violated Plaintiffs' federal civil rights and constituted behavior prohibited by federal statute, as well as agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

33.     Defendants have lax policies or lax enforcement of these policies that allow for these intrusions.

34.     Defendants either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their employees.

35.     Defendant DPS DOES and Commissioner Defendants failed to put into place systems and/or procedures to ensure Plaintiffs' and Class Members' Private Data would be protected and would not be subject to misuse. The DPS DOEs and Commissioner Defendants could have taken appropriate security safeguards in regard to Plaintiffs' and class members' Private Data, but failed to do so.

36.     Any attempts at safeguards put in place by DPS DOEs and Commissioner Defendants to prevent Peterick's illegal access and viewing of Plaintiffs' and Class Members' Private Data were inadequate to protect this private information from being unlawfully accessed.

7

37.     Defendants' conduct, as described above, does result in an increased risk of identity theft.  Defendants' conduct also caused Plaintiffs and class members to lose at least a portion of the economic value of their private information.

38.     It is the policy of the State of Minnesota to follow the DPPA.

39.     In failing to properly implement, maintain and monitor the DPS Databases, the DPS Commissioners failed to follow Minnesota's policy.

40.     Many viable methods were and are available to prevent this illegal accessing of private information.

41.     In so doing, the Defendants violated the United States Constitution and the DPPA, and are liable under 42 U.S.C. § 1983.

42.     Defendants have damaged Plaintiffs' and Class Members' lives by these violations.

43.     Plaintiffs and Class Members are entitled to a determination that their rights have been violated, to an order enjoining further violations, and to monetary damages for these violations of federal and state law.

## COUNT I – Violations of the Drivers' Privacy Protection Act

### 18 U.S.C. § 2721, *et seq.*

*(Against All Defendants)*

44.     Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 43 as though fully set forth in this Paragraph 44.

45.     Plaintiffs and Class Members provided personal information to the DPS including their address, color photograph, date of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

46.     The DVS database also maintained Plaintiffs' and Class Members' driving record.

47.     At no time did Plaintiffs or Class Members provide their consent for Peterick, the Supervisor Defendants, the Defendant Commissioners, DPS DOEs or the County to obtain, disclose or use, or for any of Supervisor Defendants, the Defendant Commissioners, or the County to allow Peterick to obtain, disclose or use, Plaintiffs' and Class Members' Private Data for anything but official business.

48.     Intentionally obtaining, disclosing or using driver's license information without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

49.     The DPPA provides redress for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

50.     The Defendants, each of them, have invaded Plaintiffs' and Class Members' legally protected interest under the DPPA.

51.     Upon information and belief, Defendant Peterick knowingly obtained, disclosed, or used Plaintiffs and the Class Members' Private Data from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a).

52.     None of the Defendants' activities fell within the DPPA's permitted exceptions for procurement of Plaintiffs' or Class Members' private information.

9

53.    Peterick knew that her action related to the Plaintiffs' and the Class Members' personal information was in violation of the DPPA.

54.    All DPS DOEs Supervisor Defendants and Defendant Commissioners knew or should have known and/or recklessly disregarded that Peterick was making these illegal accesses.

55.    By the actions described above, Peterick was acting within the scope of his or her employment when she obtained, disclosed, or used the Plaintiffs' and Class Members' Private Data from the DVS database for an impermissible purpose.

56.    The Supervisor Defendants, Defendant Commissioners, and the Defendant County knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' and Class Members' private personal information by Peterick.

57.    Their actions, particularly those of the DPS Commissioners, constitute knowing disclosures of the personal information of Plaintiffs and Class Members under the DPPA.

58.    DPS Commissioners Campion and Dohman, have been involved with law enforcement for many years.

59.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

60.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police

10

Department; prior to that time a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

61.     Dohman also served as president of the Minnesota Chiefs of Police Association.

62.     In other lawsuits and potential lawsuits, DPS audits have revealed that numerous officers on the Maple Grove Police Department in particular have made impermissible accesses, including during Dohman's tenure as Maple Grove Police Chief.

63.     Plaintiffs' counsel has been informed by those familiar with the problems of police departments that misuse of private information is the main complaint of most chiefs and police human resources personnel.

64.     Former Commissioner Michael Campion served from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the Bureau of Criminal Apprehension ("BCA"), which also maintains a driver's license database.

65.     Prior to that position he was a special agent at the BCA.

66.     It was during his tenure that the DPS Database was largely developed in its current format.

67.     On information and belief, misuse of the DPS Database has been well-known to the Commissioner Defendants.  At a hearing at which Commissioner Dohman testified, the testimony of the Legislative Auditor revealed that at least 50% of law enforcement officers are misusing the DPS Database by accessing, disclosing, and/or using the driver license personal information for an impermissible purpose.

11

68.    On information and belief, the Commissioner Defendants knew this, and knowingly disclosed the information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.  Commissioner Dohman's practices and procedures that result in knowing disclosure of private information are directly contrary to the policy of the State of Minnesota.

69.    Commissioner Dohman has been unresponsive to the need to protect private information until the Legislative Auditor's report focused public attention on the matter, requiring some response.

70.    Experts in the field of police training report that the primary complaint of many police departments is that law enforcement personnel misuse private information. This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

71.    Peterick used Defendant County's computers, passwords, and passcodes to obtain the Plaintiffs' and Class Members' Private Data.

72.    The sheer volume of accesses of Plaintiffs' and Class Members' Private Data by Peterick makes apparent that Defendants' use was not permissible.

73.    The Supervisor Defendants and Defendant County are each vicariously liable for the acts of Peterick.

74.    Plaintiffs and Class Members have suffered harm because their private information has been obtained unlawfully.  Plaintiffs and Class Members suffered and

12

continue to suffer harm by virtue of the increased risk that their protected information is in the possession of Defendant County's personnel who obtained it without a legitimate purpose.  This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

75.     The Defendants each willfully and recklessly disregarded the law, entitling Plaintiffs and Class Members to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. section 549.20.  Plaintiffs and Class Members are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

76.     In addition, under the DPPA, Plaintiffs and Class Members are each entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1).  Plaintiffs and Class Members need not prove actual damages to receive said liquidated damages.

## COUNT II – Violation of 42 U.S.C. § 1983

*(Against Defendant Peterick Only)*

77.     Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 76 as though fully set forth in this Paragraph 77.

78.     At no time did the Plaintiffs or Class Members behave in a manner that would provide any legal justification for Peterick to invade their privacy.

13

79.     The DPPA establishes that obtaining an individual's driver's license information without a legitimate purpose constituted an illegal search under the meaning of the Fourth Amendment to the Bill of Rights.

80.     Peterick's viewing of Plaintiffs' and Class Members' Private Data was unauthorized, unjustified, and excessive, and violates the Fourth Amendment and the laws of the United States.

81.     By the actions described above, Peterick, acting under color of state law, violated and deprived Plaintiffs and Class Members of their clearly established and well-settled civil right to be free from an unconstitutional search.

82.     The acts of Peterick, acting under the color of state law, constituted an invasion or repeated invasions of Plaintiffs' and Class Members' clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

83.     The DPPA creates an individual right to privacy in a person's driver's license information, thereby prohibiting unauthorized accessing of all persons' information, including Plaintiffs' and Class Members' information.

84.     Peterick, acting under color of state law, knew that her actions violated and deprived Plaintiffs' and Class Members of their clearly established statutory rights under the DPPA.

85.     Peterick deprived Plaintiffs and Class Members of their federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Plaintiffs' and Class Members' rights would be violated by his or her actions.

86.     Peterick was deliberately indifferent to the Plaintiffs' and Class Members' statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of their Private Data

87.     As a direct and proximate result of Peterick's acts and omissions, Plaintiffs and Class Members have been damaged in an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

88.     Punitive damages are available against Peterick for his or her reckless and callous disregard for Plaintiffs' and Class Members' rights and his or her intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the different pleading standard for punitive damages set forth in Minn. Stat. § 549.20.

89.     Plaintiffs and Class Members are entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT III – Violation of 42 U.S.C. § 1983

*(Against Supervisor Defendants and Mille Lacs Only)*

90.     Plaintiffs and Class Members reaffirm and reallege the allegations in Paragraphs 1 through 89 as though fully set forth in this Paragraph 90.

91.     Peterick's numerous accesses of Plaintiffs' and Class Members Private Data is not unique, but one example of how frequently governmental entities customarily

15

violate the DPPA by accessing private driver's license information of persons without having any legitimate or permitted reason for doing so.

92.     The information presented in this Complaint, other information to be presented at trial, and evidence reasonably likely to be determined after full discovery demonstrate that the improper access of citizens' driver's license information by Defendant County's personnel for their own personal and private uses, obtained by accessing that information through the computerized information storage system kept by the state for official purposes only, is an official custom or practice well known to Supervisor Defendants and Mille Lacs County.

93.     These customs and practices by Peterick are at variance with the written rules set down by Defendant County, but these formal rules are widely and knowingly disregarded.

94.     Given the Supervisor Defendants and Mille Lacs County's failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the Supervisor Defendants.

95.     The Supervisor Defendants and Defendant Mille Lacs County knew or should have known of this and other unlawful, improper, unjustified, and impermissible access of Private Data by Peterick.

96.     The prevalence of this custom, the lack of monitoring regarding these access practices and failure to take action to stop or prevent these practices, demonstrate the state of mind of Supervisor Defendants and Mille Lacs County.  These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory

16

and constitutional rights of the citizens and persons, including Plaintiff and Class

Members, whose information has been wrongfully accessed.

97.     The Supervisor Defendants and Mille Lacs County, are directly liable for

the custom and practice of the widespread illegal access of citizens' driver's license

information.

98.     The Supervisor Defendants are liable in their individual capacity.

99.     The Supervisor Defendants' individual capacity liability is due to their

actual and constructive knowledge of this practice, their failure to institute any process

for monitoring and preventing it and their deliberate indifference to the federal rights of

those persons, including Plaintiffs and Class Members, whose information has been

wrongfully accessed.

100.    The Supervisor Defendants and Mille Lacs County are for the failure to

train, monitor, and supervise Peterick who was improperly and unlawfully accessing the

private driver's license information of citizens, including Plaintiffs and Class Members,

without a proper, lawful, permissible, justifiable purpose for doing so.

101.    This pattern of failure to train, monitor, supervise, and discipline

demonstrates the state of mind of these Supervisor Defendants and a deliberate

indifference to the rights of the citizens and others whose information has been so widely

accessed, including Plaintiffs and Class Members.

102.    Upon information and belief, no meaningful attempt has been made by the

Defendant County or Supervisor Defendants to provide redress and assurance to the

persons, including Plaintiffs and Class Members, whose information has been wrongfully accessed by Peterick.

103.    As a direct and proximate result of the acts and omissions of the Supervisor Defendants and Mille Lacs County, Plaintiffs and Class Members suffered damages an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

104.    Punitive damages are available against Supervisor Defendants for their reckless and callous disregard for Plaintiffs' and Class Members' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the different pleading standard set forth in Minn. Stat. § 549.20.

105.    Plaintiffs and Class Members are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV – Violation of 42 U.S.C. § 1983

*(Against Commissioner Defendants and DPS DOEs)*

106.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 105 as though fully set forth in this Paragraph 106.

107.    Defendant Campion was Commissioner of DPS from April 2004 to February 2011.

108.    Defendant Dohman became Commissioner of DPS in March 2011 and presently serves in that role.

18

109.    In that capacity the DPS Commissioners and DPS DOEs were responsible for creating, maintaining, and providing access to the database that included Plaintiffs' and Class Members' Private Data and for hiring and supervising employees who were creating, maintaining, and providing access to the said database.

110.    DPS Commissioners and DPS DOEs also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiffs' and Class Members' private information.

111.    The DPS Commissioners and DPS DOEs failed to prevent unauthorized access to the database, including Plaintiffs' and Class Members' private data.

112.    The actions of the DPS Commissioners and DPS DOEs, as alleged, violate the rights of the Plaintiffs and Class Members under the Fourth and Fourteenth Amendments to the United States Constitution.

113.    On information and belief, the DPS Commissioners and DPS DOEs created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to driver's license information.

114.    Upon information and belief, DPS Commissioners and DPS DOEs allowed unauthorized access of Plaintiffs' and over 370 class members' Private Data.

115.    DPS Commissioners and DPS DOEs have sanctioned the constitutional violations by Defendant Peterick through their failure to remedy the policy, custom and practice of allowing unfettered and unauthorized access to the database.

116.    DPS Commissioners and DPS DOEs have been grossly negligent in supervising subordinates responsible for implementing a database that prevents unauthorized access to private, personal information.

117.    DPS Commissioners and DPS DOEs have been grossly negligent in supervising subordinates responsible for proper use of the DVS database.

118.    On information and belief, DPS Commissioners and DPS DOEs failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

119.    DPS Commissioners and DPS DOEs, acting under the color of state law, were deliberately indifferent to Plaintiffs' and Class Members' constitutionally recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of their private driver's license information.

120.    As a direct and proximate result of the acts and omissions of the DPS Commissioners and DPS Does, Plaintiffs and class members have suffered actual damages.

121.    As a direct and proximate result of the acts and omissions of the above-named Commissioner Defendants, Plaintiffs and Class Members have been damaged in an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

122.    Punitive damages are available against Commissioner Defendants for their reckless and callous disregard for Plaintiffs' and Class Members' civil rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal

common law, <u>Smith v. Wade</u>, 461 U.S. 30 (1983), and, as such, are not subject to the different pleading standard set forth in Minn. Stat. § 549.20.

123.    Plaintiffs and Class Members are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

<b>COUNT V – Violation of 42 U.S.C. § 1983</b>

<i>(Against Defendant Commissioner Dohman  – Prospective Relief)</i>

124.    Plaintiffs and Class Members reaffirm and realleges the allegations in Paragraphs 1 through 123 as though fully set forth in this Paragraph 124.

125.    Peterick's misconduct reflects a custom and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout DPS, all in violation of state policy to protect its citizens' Private Data and to enforce the DPPA and to uphold constitutionally-guaranteed privacy protections.

126.    The acts and omissions of Defendant Commissioner Dohman was the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated throughout the DPS.

127.    The lack of monitoring regarding records acquisition practices and the failure to take action to stop or prevent these practices demonstrate the state of mind of the Commissioner Dohman.

128.    These customs and practices further demonstrate Dohman's deliberate indifference to the federal statutory and constitutional rights of citizens, including

21

Plaintiffs and class members, whose information was unlawfully obtained, used, collected, stored, disclosed and disseminated.

129.    As a direct and proximate result of the acts and omissions of Commissioner Dohman, prospective injunctive relief is warranted permanently enjoining Commissioner Dohman from allowing the unfettered and unauthorized access by users of the DVS Database to view private information in violation of federal law and further requiring her to set in place policies, procedures and/or practices prohibiting the unlawful accessing, viewing, collecting, storing, disclosing and disseminating of private data in the future, as well as a mechanism to audit or monitor compliance with these procedures.

130.    Plaintiffs and class members are entitled to recover their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## CLASS ACTION ALLEGATIONS

131.    This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs bring their action on behalf of themselves and all others similarly situated, as the representative members of the following class (subject to the applicable statute of limitations):

> All individuals about whom Defendant Peterick, and/or others during their period of employment with Mille Lacs County, obtained, accessed, viewed, used, collected, stored, or disseminated personal, confidential, private, and/or highly restricted information, as designated by 18 U.S.C. § 2721, from Defendant DPS, for a purpose other than the administration and management of County business.

132.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims, and can disprove Defendants' defenses, using common, class-wide evidence.

133.    This putative class action (hereinafter "class action") satisfies numerosity, commonality, typicality, adequacy, and superiority requirements for maintaining a class.

### Numerosity – Fed. R. Civ. P. 23(a)(1)

134.    Because there may be in excess of 370 members of the class, a joinder of all members is impracticable.

135.    The identities of class members are unknown at this time and can only be ascertained though appropriate investigation and discovery.  Plaintiffs believe that the members of the class are readily identifiable from records in possession of the officers/officials of Mille Lacs County and/or properly obtained from the entity responsible for mailing the notifications.

### Commonality of Questions of Law and Fact- Fed. R. Civ. P. 23(a)(2)

136.    Questions of law and fact arising out of the various violations alleged herein to plaintiffs and others similarly situated are common to all members of the class and predominate over any questions affecting only individual members of the class. The evidence in this case will provide answers to questions that are common to members of the class and include, but are not limited to the following:

    a.   Whether Peterick improperly obtained, disclosed, and/or used Class Members' "personal information" and/or "highly restricted personal

information" from the DPS database while employed by Mille Lacs

County;

b.  Whether Peterick's actions in obtaining, disclosing, and/or using

approximately 370 individuals' DVS records violated the DPPA;

c.  Whether Peterick's actions in obtaining, disclosing, and/or using

approximately 370 individuals' DVS records was for purposes not

permitted under the DPPA;

d.  Whether the County and Supervisor Defendants are vicariously liable for

the conduct of Peterick;

e.  Whether the Plaintiffs and the Class are entitled to liquidated damages of

$2,500, plus attorneys' fees per DPPA violation pursuant to 18 U.S.C. §

2724(b)(1);

f.  Whether the Supervisor Defendants and Commissioner Defendants were

aware of Peterick's improper conduct, as described herein, but failed to take

action to stop said conduct or take any remedial action;

g.  Whether the Plaintiffs and the Class are entitled to damages under 18

U.S.C. § 1983;

h.  Whether the Plaintiffs and the Class are entitled to punitive damages under

18 U.S.C. § 2724(b)(2), federal common law, Minn. Stat. §§ 13.01 *et seq.*,

and state common law; and

i.  Whether the Plaintiffs and the Class are entitled to reasonable attorneys'

fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. §

2724(b)(3), 42 U.S.C. § 1988, Minn. Stat. § 13.08, and other laws of the

United States and the State of Minnesota.

137.    The members of the class seek to remedy a common legal grievance.  They

were all similarly affected by defendants' constitutional violations, state law violations

and the custom and/or policy complained of herein.  Furthermore, as the damages

suffered by many individual members of the Class may be relatively small in relation to

the costs of litigation, the expense and burden of individual litigation make it difficult, if

not impossible, for members of the class to redress the wrongs done to them individually.

Many if not most class members are unaware that claims exist against Defendant.

### Typicality of Claims – Fed. R. Civ. P. 23(a)(3)

138.    Plaintiffs' claims are typical of the members of the class.

139.    All common questions are able to be resolved in one case and arise out of

the same common factual occurrences as specifically and/or generally alleged herein.

140.    Certification of Plaintiffs' claims for class-wide treatment is appropriate

because Plaintiffs can prove the elements of their claims, and can disprove Defendants'

defenses, using common, class-wide evidence.

141.    Plaintiff and all members of the class sustained damages directly caused by

the defendants' wrongful, illegal and unconstitutional conduct.  That conduct was similar,

likely exactly the same, toward each of the class members – and is meant to include all

persons whose DPS information was illegally accessed.  The rights of the Plaintiffs and

of each Class Member were violated in the same manner and by the same conduct.

Common questions of law and fact include the allegations, as more specifically described and detailed, in the present complaint.

142.   It is further anticipated that the defenses to the allegations contained herein will be typical of the defenses of the class.

143.   The claims of the named plaintiffs arise from the same event or are based on the same legal theory as the claims of the purported class members.

### Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)

144.   Plaintiffs will fairly and adequately protect the interests of the members of the class.  Plaintiffs have no interests adverse to the interests of absent class members.  Plaintiffs, like all class members, had their personal information - including their addresses, color photographs, dates of birth, weights, heights, eye and hair colors, medical information, donor status, driver's license number, signature – all illegally accessed, disclosed, and/or used from the DPS database by Defendant Peterick.

145.   Plaintiffs have retained joint counsel with vast experience in DPPA matters, 42 U.S.C. § 1983 litigation, and class actions/multiparty litigation.

    **a.  Sapientia Law Group:**

    (i)    Lorenz Fett ("Fett") brings considerable litigation experience generally, and specifically DPPA litigation experience to this lawsuit.  Mr. Fett, along with members of the Sapientia Law Group, recently brought the largest DPPA case in Minnesota history, brought in Minnesota Federal District Court before the Honorable Susan Richard Nelson, titled <u>Rasmusson v. City of Bloomington, et al</u>., Civil Case No. 12-CV-00632-

SRN-JSM, which has had successful and impactful results to date.  Mr. Fett is also involved in numerous other cases involving the DPPA.  Mr. Fett's practice includes both employment and civil rights cases; Mr. Fett tried his first Section 1983 Civil Rights case in 1979 in Federal District Court for the Southern District of Iowa.  He has been admitted to practice in Minnesota, Iowa, California, Minnesota Federal District Court, the Eighth and Ninth Circuit Courts of Appeal, and the United States Supreme Court.

(ii)     Jon Strauss ("Strauss") has extensive experience with complex litigation.   He is admitted to practice in the State of Minnesota, United States District Court for the District of Minnesota, Eighth Circuit Court of Appeals, and the United States Supreme Court.  In addition to other civil rights work, Strauss worked on Sapientia Law Group's team to represent the Plaintiff in the <u>Rasmusson v. City of Bloomington, et al</u>., Civil Case No. 12-CV-00632-SRN-JSM matter, which is a civil rights and DPPA action against over 150 defendants.  Presently, Mr. Strauss is working on the team representing numerous other plaintiffs in DPPA-related matters.  In addition, Strauss was counsel for several victims of the complex litigation resulting from the I-35W bridge collapse.   Strauss has represented clients in a variety of litigation in state and federal courts around the country

(iii)     Sonia Miller-Van Oort ("Miller-Van Oort") has been admitted to practice in the State of Minnesota, the State of Iowa, the United States

District Court for the Districts of Minnesota, the Southern District of Iowa, and the Western District of Wisconsin, the Seventh Circuit Court of Appeal, the Eighth Circuit Court of Appeals, and the United States Supreme Court.  Over the past 15 years, Miller-Van Oort has worked on various types of complex litigation involving multiple parties, has represented businesses of all sizes, including Fortune 500 companies, and has also represented plaintiff individuals in select employment-related civil rights litigation.  Recently, with Sapientia Law Group colleagues, Miller-Van Oort brought the DPPA and Section 1983 action titled <u>Rasmusson v. City of Bloomington</u>, et al., Civil Case No. 12-CV-00632-SRN-JSM, in this Court, as well as other DPPA matters on behalf of other plaintiffs.

**b.  Sieben, Grose, Von Holtum & Carey, Ltd.**:

(i)      Sue Holden ("Holden") has been admitted to practice in the State of Minnesota, United States District Court for the District of Minnesota and the Western District of Wisconsin, the Eighth Circuit Court of Appeals, and the United States Supreme Court.  Over the last 25 years, Holden's practice has been at least 95% contingent fee work, representing plaintiffs and individuals in a wide variety of claims including negligence, professional negligence, construction and product liability, evaluating multiparty claims as Chair of the Special Master Panel in the 35W bridge claims process, and pursuing many multiparty claims, in multidistrict litigation or otherwise.

(ii)    Jeffrey Montpetit ("Montpetit") has been admitted to practice in the State of Minnesota, State of Wisconsin, the United States District Court for the District of Minnesota since 1999 and the Eighth Circuit Court of Appeals since 2000.  Over the last 14 years, Montpetit's practice has been at least 95% contingent fee work, representing plaintiffs and individuals in a wide variety of cases alleging consumer rights violations, professional negligence, and Section 1983 civil rights litigations.  In addition, Montpetit and/or the Sieben firm have handled Section 1983 civil rights litigation, sought class certification under Rule 23 of the Federal Rules of Civil procedure, and are otherwise familiar with handling and coordinating large, multiparty claims that address common issues of law and fact in claims involving in excess of 300 potential plaintiffs.  Most recently, Montpetit sought and was granted class certification in a Section 1983 Civil Rights case in 2010, in Minnesota Federal District Court before the Honorable Judge Richard H. Kyle, in the matter of Robinson v. County of Ramsey, et al., Case no. 0:08-CV-5779; which was handled to a successful conclusion.

(iii)   Montpetit, Holden and/or the Sieben firm have handled Section 1983 civil rights litigation, sought class certification under Rule 23 of the Federal Rules of Civil procedure, and are otherwise familiar with handling and coordinating large, multiparty claims that address common issues of law and fact in claims involving in excess of 300 potential plaintiffs.

146.   Fett, Strauss, Miller-Van Oort, Holden and Montpetit are all presently representing named plaintiffs and the putative class in similar action against former DNR employee, John Hunt, and others who allowed him to access over 5000 individual's drivers' license data.  Sapp, et. al. v. Hunt, et. al., Civil Case No. 13-286 (JNE/TNL).

147.   The above identified attorneys, along with their respective firms and partners, will fairly and adequately represent the interests of the class, and commit the necessary resources to accomplish the same.

148.   Plaintiffs' counsel will vigorously prosecute this class action.  Defendants have acted on grounds generally applicable to the class and plaintiffs seek relief with respect to the class as a whole.

149.   Sapientia Law Group, PLLC ("SLG") is an experienced litigation firm and is involved in a number of complex litigation matters.

150.   SLG has significant experience litigating DPPA matters, including Rasmusson v. City of Bloomington et al.

151.   SLG attorneys have litigated complex and class actions matters.  SLG attorneys have litigated class actions related to the tobacco law suit, financial matters, and civil rights.

152.   The above identified attorneys, along with their respective firms and partners, will fairly and adequately represent the interests of the class, and commit the necessary resources to accomplish the same.

153.   Plaintiffs' counsel will vigorously prosecute this class action.  Defendants have acted on grounds generally applicable to the class and plaintiffs seek relief with respect to the class as a whole.

**Superiority and Appropriateness – Fed. R. Civ. P. 23(b)(2) and 23(b)(3)**

154.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all members of the class is impracticable.  The number of such individual actions would prove unduly burdensome and inefficient for the courts.

155.   Serial adjudications in numerous venues are not efficient, timely, or proper. Judicial resources throughout the State of Minnesota and/or Federal Courts will be unnecessarily depleted by resolution of individual claims.  In addition, individualized judgments and rulings could result in inconsistent relief for similarly situated plaintiffs.

156.   Because a common set of facts accompanies each class members' interests and the members of the class seek to remedy a common legal grievance, common questions of law and fact predominate over individual issues.  Individual litigation increases expenses to all parties while a class action presents better management options and provides the benefit of consistent adjudication and supervision by a single court.

157.   The conduct of this action as a class action will both protect the rights of each class member and promote judicial economy, efficiency and consistency.  Notice of the pendency and of any resolution of this action can be provided to the class members by United States Mail.

31

## JURY DEMAND

158.    Plaintiffs demand a trial by jury as to all issues of fact herein properly triable before a jury under any statutory or common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members prays for judgment against the Defendants as follows:

1. A money judgment against all the Defendants for liquidated, actual and compensatory damages in an amount in excess of One Million ($1,000,000) Dollars and punitive damages in an amount to be determined by the jury, together with their costs, including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2. Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3. Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4. An injunction, permanently enjoining all Defendants from viewing Plaintiffs' and Class Members' Private Data in violation of the DPPA and Minnesota Government Data Practices Act, unless necessary for business related or authorized purposes under the law; and

5. For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**

Dated:  May 31, 2013          s/Jonathan A. Strauss
                             Jonathan A. Strauss (#0279602)
                             Lorenz F. Fett (#196769)
                             Sonia Miller-Van Oort (#278087)
                             Kenneth H. Fukuda (#0389301)
                             12 South Sixth Street, Suite 1242
                             Minneapolis, MN  55402
                             (612) 756-7100

                             and

                             **SIEBEN GROSE VON HOLTUM &
                             CAREY**

                             s/Jeffrey M. Montpetit
                             Susan M. Holden (#0189844)
                             Jeffrey M. Montpetit (#0291249)
                             901 Marquette Avenue,
                             Suite 500,
                             Minneapolis, MN 55402
                             (612) 333-4500

                             **ATTORNEYS FOR PLAINTIFFS**